RENDERED: MARCH 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0103-DG

GREGORY CRANDELL                      APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                    NO. 2019-CA-1325
BULLITT CIRCUIT COURT NO. 17-CI-00357

COMMONWEALTH OF KENTUCKY,           APPELLEE
CABINET FOR HEALTH AND FAMILY
SERVICES EX REL. MARY J. DILKE

## OPINION OF THE COURT BY JUSTICE KELLER

## AFFIRMING IN PART, VACATING IN PART, & REMANDING

Gregory Crandell appeals from a Court of Appeals decision affirming a Bullitt Family Court order of contempt. We affirm the factual findings of the trial court, as well as its finding of contempt. However, because the order seeks to punish future contempt rather than present contempt, the trial court abused its discretion. For the reasons stated below, we affirm in part, vacate in part, and remand the order of the family court.

### I. BACKGROUND

In July of 1997, the Superior Court in Contra Costa County, California ordered Gregory Crandell to pay $391 per month in child support for two minor children. The term of the order was June of 1997 to December of 2016. As of

September 8, 2017, Crandell still owed $115,760.20 in arrearages on his child support. Crandell failed to appear following an initial summons regarding registering the California order in Kentucky. Upon his failure to appear, Kentucky registered California's order on September 8, 2017 by default judgment. Crandell failed to appear after allegedly being served a summons, and failed again to appear at subsequent hearings in May and July of 2018 regarding the California child support order and contempt. As a result, a bench warrant was issued for his arrest. Crandell was subsequently arrested on March 21, 2019. While in jail, Crandell moved for work release. He represented to the court that although he was disabled, he believed he could get a job.

On March 26, 2019, the family court held an initial hearing. The court appointed a public defender to represent Crandell. Although Crandell was found indigent, he was also ordered to pay a $100 public defender fee before the next hearing. Crandell remained in custody and failed to pay the fee.

Crandell's contempt hearing was eventually held on July 16, 2019, at which he was still in custody. At that hearing, Crandell alleged that he could not pay the arrearage due to his physical disability. He offered as proof the testimony of two workers affiliated with the housing program in which he lived. Neither of these witnesses testified about his disability specifically. Instead, they testified regarding his qualification for the housing program they managed. Crandell's housing was funded by a program under the Department of Housing and Urban Development. The housing program was restricted to individuals who have been homeless, have a professionally-verified disability of

2

long-lasting duration, and have sufficiently low income. Both witnesses confirmed that Crandell qualified for this housing.

In addition to testimony asserting that he qualified for disability housing, the trial court observed that Crandell could not walk without his cane and could not stand without bearing all his weight on his walking aid. At one hearing, Crandell had to be given a chair due to his inability to support himself standing up. Crandell walked with a pronounced limp. His visible disability appeared unaltered between hearings, although neither his specific diagnosis nor accommodation needs were ever discussed.

Testimony at his contempt hearing also revealed that Crandell had no record of having a job in Kentucky since at least 2016. Crandell had been living off the Kentucky Transitional Assistance Program and disability benefits, although what those benefits were was never discussed. He used these public benefits in part to support his two *other* minor children—children not parties to the California order—who lived with him.

The Bullitt County Family Court ultimately held Crandell in contempt, found him to be $126,691.25 in arrears (after applying interest), and reduced his monthly payment to $251. The family court also noted that Crandell still owed a $100 public defender fee. Finally, the family court ordered that if Crandell failed to pay the stated amount by the 11th of each month, he must serve 20 days in the Bullitt County Detention Center. Crandell appealed the

family court's finding of contempt, its ordered remedy,[1] and the imposition of a public defender fee.

The Court of Appeals reversed the family court's imposition of a public defender fee.[2] The Court of Appeals then affirmed the family court's order of contempt but declined to review the remedy due to lack of preservation. Crandell moved for discretionary review, and this Court granted his motion.

To this Court, Crandell argues that the finding of contempt was in error, and the remedy for contempt imposed by the family court was an illegal sanction. Crandell further argues that the issue is preserved, in spite of the Court of Appeals' holding. On appeal to our Court, the Commonwealth has failed to supply a brief. Absent their brief, this Court is free to "accept [Crandell's] statement of the facts and issues as correct," including the issue of preservation. CR 76.12(8)(c). Furthermore, to fail to rule on the remedy imposed would "result in manifest injustice." *Lewis v. Lewis*, 875 S.W.2d 862, 863 (Ky. 1993) (citations omitted). Accordingly, we review the order of contempt and its imposed remedy.

---

[1] Incarceration is one available remedy for civil contempt on a child support order. *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 334 (Ky. 2011). We acknowledge that this remedy functions more like a sanction in the present context. However, given the unique nature of civil contempt on a child support order, we continue to treat incarceration as a "remedy."

[2] This issue was not cross-appealed to our Court, and so the Court of Appeals' reversal as to the public defender fee stands.

## II. ANALYSIS

"A trial court . . . has broad authority to enforce its orders, and contempt proceedings are part of that authority." *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011) (citing *Lewis*, 875 S.W.2d at 864). We review contempt orders "for abuse of discretion, but we apply the clear error standard to the underlying findings of fact." *Id.* (citations omitted). Although the trial court is the finder of fact as to whether an alleged contemnor is able to perform on the underlying judgment, "[t]he power of contempt cannot be used to compel the doing of an impossible act." *Clay v. Winn*, 434 S.W.2d 650, 652 (Ky. 1968); *Lewis*, 875 S.W.2d at 864 (citing *Rudd v. Rudd*, 184 Ky. 400, 214 S.W. 791, 796 (1919)).

Because the contempt order in the case at bar is civil, rather than criminal, the burden of proof initially lies on the party seeking sanctions to make a prima facie case. *Ivy,* 353 S.W.3d at 332; *see also Roper v. Roper*, 242 Ky. 658, 47 S.W.2d 517, 519 (1932). If the movant shows by clear and convincing evidence that the alleged contemnor has not met their obligation, the burden shifts to the alleged contemnor. *Ivy*, 353 S.W.3d at 332. The alleged contemnor must then show "clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying." *Id.* (citation omitted). After proof is offered by both the movant and the alleged contemnor, the court must weigh the totality of evidence. *Id.*

5

Based on this evidence, in the child support context, the court must make specific findings of fact concerning the obligor's present ability to pay. *Lewis*, 875 S.W.2d at 865. These findings are required when ordering incarceration as a remedy for a finding of contempt. *Id.* No matter the family court's finding on a present ability to pay, it must not threaten alleged contemnors with "coercive remed[ies]" for future conduct. *Ivy*, 353 S.W.3d at 335. Thus, future contempt may not be the subject of the enforcement mechanism within a contempt order. *Id.* Similarly, a family court may not order the impossible to remedy contempt. *Lewis*, 875 S.W.2d at 864.

In *Lewis*, an indigent father was found in contempt for failing to comply with a child support order. *Id.* at 863. At his contempt hearing, he was not given the opportunity to explain his inability to pay. *Id.* The family court ordered incarceration until he purged himself of contempt "without a specific finding of fact concerning the obligor's present ability to pay." *Id.* This Court held that the family court erred by ordering incarceration as a remedy without making a finding regarding the father's present ability to pay. *Id.* at 865. We noted that while an unsatisfied child support obligation is not "discharged by mere indigence," the trial court nonetheless erred by failing to note or consider facts in support of indigency prohibiting payment. *Id.*

Almost twenty years later, this Court heard another child support contempt case in *Ivy*. 353 S.W.3d 324. There, as in the case at bar, a parent asserted that she was unable to perform her child support duties due to disability. *Id.* at 326. To meet her burden of proof, Ivy presented evidence of her

6

Social Security benefits, which, after payment of bills and rent, provided her with only $25 to $50 each month. *Id.* at 333. She received her SSI benefits due to a psychological disability. *Id.* In spite of this, the family court ordered Ivy to pay $5 per month towards her arrearage and reduced her ongoing support obligation to $60 per month. *Id.* at 327. Although the court did make a finding that Ivy was disabled, it also found Ivy "to be an able-bodied person capable of providing financial support to her child." *Id.* It further ordered that "any future failure to pay the new amount [of $60] plus $5 per month toward the arrears would result in her being placed in jail." *Id.* at 326.

On review, this Court held that "Ivy's inability to pay her child support precluded holding her in contempt for failing to do so." *Id.* at 332. Regarding the family court's factually deficient order, the Court stated,

> The family court is not free, of course, simply to disregard the Social Security Administration's determinations that an SSI recipient is disabled and needs the full amount of his or her award for subsistence. If earning capacity is to be attributed to the recipient, or if child support is to be demanded from the SSI benefit itself, there must be evidence clearly establishing the recipient's ability to work or the recipient's ability to afford the support payment. We agree with the Court of Appeals that there was no such evidence here.

*Id.* at 333. This Court thus held that the family court's finding of contempt was improper. Although the Cabinet had met its burden of showing a prima facie case for contempt, Ivy put on clear and convincing evidence of her own inability to pay. *Id.* The family court erred by failing to consider that proof, and by failing to make any findings supporting its legal conclusion that Ivy was "able-bodied" and capable of paying. *Id.*

7

This Court went further in its analysis. It held that even if the contempt order had been proper, the remedy imposed would itself have been improper. *Id.* at 335. The Court stated,

> The court's attempt to fashion a coercive remedy, however, by threatening Ivy with [*future*] incarceration for *future* violations of her support order, did not provide her with a true opportunity for purging, and thus was invalid. As noted above, the purge condition of a coercive order must be something presently within the contemnor's ability to perform. Ivy had no present ability to perform future obligations. By itself, moreover, a future failure to pay would not, in and of itself, the court's order notwithstanding, justify Ivy's incarceration. That future conduct was not, and could not be, the subject of the pending contempt motion because it had yet to occur. If Ivy did fail to pay, she would be entitled to notice, a new hearing, and a finding that at that future point in time she had the ability to comply.

*Id.* (footnote and citation omitted). Considering this error, the Court vacated the contempt order and remanded for further proceedings. From *Ivy*, it is clear that contempt order remedies must thus pertain to *present* inability to pay. *Id.* A family court may not use its current power to punish future contempt. *Id.*

The family court in the case at bar did make a factual finding that Crandell had the present ability to pay due to his assertions in pursuit of work release. While this finding is limited, we acknowledge that the family court was in a difficult position: after the burden shifted to Crandell to prove he was unable to pay due to disability, Crandell only put on evidence regarding his current housing development. None of the testimony was *about* his ability to work, or even about the accommodations he required beyond the implication that he needed a first-floor apartment for his mobility concerns. Instead, the testimony presented went to the qualifications one must meet to live in the

8

development, namely that you have a long-term disability, were previously homeless, and have a low enough income.

Regarding Crandell's disability, the family court had to weigh the evidence of Crandell's earlier assertion that he believed he could get work presently against evidence all but amounting to vague hearsay and implications regarding the existence and nature of his disability. Further, unlike in *Ivy*, the family court did not even have the benefit of knowing anything regarding the type or amount of disability payments he received. After a thorough review of the record, we cannot say, given the circumstances, that the family court's factual findings were erroneous. We thus affirm the family court's finding of contempt.

Because the factual findings of the family court were not erroneous, we shift our focus to the remedy portion of the order. Here, the family court's order required that should Crandell fail in the future to meet his support obligation, he would be incarcerated. The order contains the same error written about in *Ivy*: the family court made future conduct "the subject of the pending contempt motion," even though "it had yet to occur." *Id.* at 335. Doing so was improper. Just as in *Ivy*, here, Crandell should have been "entitled to notice, a new hearing, and a finding that at [the future points] in time, [he] had the ability to comply" for each new finding of future contempt. *Id.* (citation omitted). Instead, the family court ordered that Crandell's future failure to pay would be punishable by a 20-day period of incarceration each month he failed to meet his support obligation. There was no termination provision to the order—

9

presumably, for the rest of his life, Crandell was to be subject to monthly 20-day jail stays if he failed to pay.

Because the family court sought to coercively punish Crandell's future conduct, the order was an abuse of discretion. The family court may only purge *present* contempt in executing a remedy. We therefore remand the issue of the remedy for further findings or other proceedings as necessary and consistent with this Opinion.

Having concluded the ordered remedy was erroneous, we find it instructive to further consider the practicality of the order itself. The order approaches impossibility. Technically, the $251 Crandell would owe each month amounts to roughly five full working days of minimum wage earnings. Logistically, however, the requirement is practically infeasible. The family court in this case had a clear and convincing showing of Crandell's present lack of work. That means that Crandell, before the 11th of the next month, would need to *find* work. It takes time to apply and be accepted to work, then more time to receive your first check (assuming you find an employer willing to hire you with the knowledge that you may be either restricted by work release, or absent fully for almost three weeks at a time).[3] In the likely event that Crandell fails to find

---

[3] The realities of pay schedules further tend to show just how impracticable the family court's order was. The $251 was to be due on the 11th of each month. The Bureau of Labor Statistics found in 2020 that in the United States, pay schedules that are biweekly, semimonthly, and monthly make up 67% of all pay frequencies. Only 33% of employees in the United States are paid on a weekly schedule.

Let us assume, arguendo, that Crandell is lucky and finds a job in the time allotted between periods of incarceration that pays weekly. Typically, for any job, paychecks issue at the end of a pay period. That means that if Crandell starts in the middle of a pay period (for example, if Crandell is released on a Monday and begins

work *and* work enough to make the future payment amount, he will be put in jail. If released, he must try all over again with only 8, 10, or 11 days, depending on the month, before he had to report to jail again. This system of twenty days in, a bit over a week out—for the rest of Crandell's life—is a Sisyphean cycle that will likely manage to both expend county resources and fail to accomplish the goal of satisfying Crandell's outstanding arrearage. The order is completely impractical from a compliance perspective, and makes it less likely that Crandell will ever satisfy the arrearage.

### III. CONCLUSION

For the reasons stated above, we hold that the family court abused its discretion in executing a contempt order that punished future contempt. Accordingly, the portion of the Court of Appeals' decision upholding the trial court's finding of contempt is affirmed, and the portion of its decision upholding the contempt order's remedy is reversed. The contempt order is therefore vacated in part, and this matter is remanded for further findings and proceedings consistent with this opinion.

---

working on Tuesday), payment will be withheld until the end of the *next* pay period. For a weekly job whose pay period is Monday to Saturday, if Crandell starts working on Tuesday or Wednesday after a period of incarceration, it will be impossible for him to get paid before the 11th of the following month. If he starts working on a Thursday, he could only make a pay day in six out of twelve months. And this is in the *best* case scenario, assuming a weekly pay period.

If Crandell manages to get a job that pays biweekly or semimonthly, then it becomes impossible for him to get paid in time to satisfy the obligation in the 8, 10, or 11 days (depending on the month) he has in between the next period of release and incarceration. Crandell would require work release in either case, assuming he obtains work at all, and would still be required to serve at least one 20-day period in jail (albeit with work release) before even possibly earning enough money to satisfy the payment for the following month.

11

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Mauer
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Jeffrey Lane England
Assistant County Attorney